UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. CR00-283-MJP |
| Plaintiff, | ) | |
| v. | ) | SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS TO ALLEGED VIOLATIONS OF SUPERVISED RELEASE |
| SHAWN MICHAEL LUNDY, | ) | |
| Defendant. | ) | |

An evidentiary hearing on supervised release revocation in this case was scheduled before me on February 17 and 18, 2010. The United States was represented by AUSA Adam Cornell and the defendant by Gabriel I. Banfi. The proceedings were digitally recorded.

Defendant had been sentenced on or about December 15, 2000 by the Honorable Marsha J. Pechman on charges of Manufacturing Marijuana and Money Laundering, and sentenced to 120 months custody, 5 years supervised release. (Dkt. 64.)

The conditions of supervised release included the standard conditions plus the requirements that defendant be prohibited from possessing a firearm or destructive device, submit to drug testing, abstain from alcohol, participate in a substance abuse program, submit to search,

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS
TO ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE -1

participate in a mental health program, provide access to financial information, be prohibited from incurring new credit obligations or lines of credit, obtain preapproval for all employment and provide his probation officer with regular pay stubs, and cooperate with the Internal Revenue Service in the determination and payment of all taxes.

Defendant's term of imprisonment was reduced to 90 months on July 9, 2007. All other terms and conditions of the Judgment remained in effect. (Dkt. 79.)

Following an arrest of defendant in Arlington, Washington for driving under the influence on July 26, 2008, the conditions of supervision were modified to require defendant to participate in a home confinement program with electronic monitoring for 120 days and to prohibit defendant from entering any establishment where alcohol was the primary commodity for sale. (Dkt. 80.)

In an application dated January 7, 2010 (Dkt. 81, 82), U.S. Probation Officer Steven R. Gregoryk alleged the following violations of the conditions of supervised release:

1. Committing the criminal offense of possession of marijuana on January 7, 2010, in violation of the standard condition of supervision ordering that he not commit another federal, state, or local crime.

2. Committing the criminal offense of possession of drug paraphernalia on January 7, 2010, in violation of the standard condition of supervision ordering that he not commit another federal, state, or local crime.

3. Associating with convicted felons on January 7, 2010, in violation of standard condition 9.

In an application dated January 13, 2010 (Dkt. 90, 91), U.S. Probation Officer Steven R.

Gregoryk alleged an additional violation of the conditions of supervised release:

    4. Committing the crime of Theft 1, on or about January 7, 2010, in violation of the general condition that he not commit another federal, state or local crime.

In an application dated January 20, 2010 (Dkt. 92, 93), U.S. Probation Officer Steven R. Gregoryk alleged an additional violation of the conditions of supervised release:

    5. Committing the crime of Possession of Stolen Property 1, on or about January 7, 2010, in violation of the general condition that he not commit another federal, state, or local crime.

Defendant was advised in full as to those charges and as to his constitutional rights, and requested an evidentiary hearing before a Magistrate Judge (Dkt. 89). The hearing was held on February 17 and 18, 2010, at which time testimony was taken, exhibits were admitted into evidence, and the argument of the parties was considered (Dkt. 97, 98). The government moved to dismiss violations 1, 2 and 3 at the commencement of the evidentiary hearing. The matter is now ready for decision.

### Findings of Fact and Recommendations

I find that the government has not established by a preponderance of the evidence that defendant has violated the conditions of supervised release as alleged in violation 4.

*Committing the Crime of Theft 1 on or before January 7, 2010*

The conditions of supervise release provide that "The defendant shall not commit another federal, state or local crime." (Dkt. 64 at 3.) Defendant is alleged to have been involved in a fraud scheme involving the Lowe's Home Improvement stores. In support of this allegation, the United States offered the testimony of Jonathan Graham, the regional loss prevention manager

for Lowe's, as well as the testimony of Detective David Startup of the Washington State Patrol, Investigative Services Bureau.

Mr. Graham testified that in August 2008 he was present at an interview of Michael John Suryan (Ex. 1), who had been arrested previously on a traffic stop and whose vehicle was found to contain several fraudulent Alaska drivers licenses in the name of various individuals with Mr. Suryan's photograph, as well as Lowe's UPC labels and sales receipts.[1] Mr. Suryan told Mr. Graham and Detective Startup, that he and others, directed by the defendant, would purchase various inexpensive items from a Lowe's store, scan the UPC labels from the items and produce a number of duplicate labels, then re-enter the store and affix false, lower priced UPC labels on more expensive items and purchase those items at the fraudulently lowered price. They would then remove the false UPC label, and return the items for refunds at the correct, higher price. The refunds were paid in the form of Lowe's gift cards. Suryan told Mr. Graham and Detective Startup that the scheme required the utilization of fake identification documents such as drivers' licenses, because Lowe's had a limit on the number of returns that could be made per person without a valid receipt, and so they had to assume different identities during the course of the scheme. Suryan said that the defendant would then use the gift cards to purchase other merchandise from Lowe's, and would also use fake Lowe's receipts and the false Alaska drivers licenses to obtain other refunds or merchandise. (*See* Ex. 1.)

The government introduced six photographs into evidence (Exs. 20-25) showing an individual returning merchandise and obtaining gift cards at a Lowe's store in Arlington,

---

[1] Mr. Suryan did not testify. The government indicates that efforts to locate Mr. Suryan in order to serve him with a subpoena were unsuccessful.

Washington. Also introduced into evidence were exhibits consisting of the "electronic journal" for the cash register station for each transaction shown in these photographs[2]. (Exs. 6, 8, 10, 12, 14, 16) The electronic journals show that merchandise was purchased with merchandise/gift cards. Mr. Graham testified that he believes the individual in the photographs is the defendant. The government produced records showing that the gift cards returned by the individual depicted in the photographs (Exs. 20-25) were originally issued in the names of various individuals, some of whom were real persons and some of whom were fictitious. (Ex. 5, 7, 9, 11, 13, 15) Mr. Graham admitted that the defendant was not seen using false identification documents in the store, or affixing the false UPC labels to products. He indicated that the defendant, when questioned, denied the fraud and asserted that he bought the gift cards on Craig's List.

The defendant became the focus of this fraud investigation after Mr. Suryan identified him as the ringleader of the operation. Mr. Suryan made no mention of the defendant's involvement at the time of the August 2008 traffic stop, but did so several months later, in December 2008, when he was arrested after attempting a UPC label switch at a Lowe's store in Vancouver, Washington. At that time, Mr. Suryan indicated that he had been involved in the fraud scheme with defendant for the previous two years, although Detective Startup conceded that the defendant had been in custody through 2007.[3] Mr. Suryan has a prior conviction for possession of a controlled substance.

The only direct evidence linking the defendant to the refund fraud scheme is Mr. Suryan, who did not appear at hearing. When first arrested, Mr. Suryan did not mention the defendant's

---

[2] The handwritten notes on these exhibits were not admitted into evidence.

involvement, but only did so several months later when arrested himself for attempted refund fraud. Although Mr. Suryan told Mr. Graham and Detective Startup that he and the defendant had been involved in the scheme for two years, the government does not dispute the defense contention that the defendant was still in custody during part of this time. Although Mr. Graham asserts that he is able to identify the defendant as the individual making purchases at Lowe's (Exs. 20-25), this Court is not persuaded that the photographs are of sufficient quality to permit this conclusion. Furthermore, even if the defendant were the individual shown in the photographs, that fact would not necessarily contradict the defendant's assertion that he had purchased the gift cards on Craig's List.

When the defendant was released from custody to begin his term of supervised release, he resided in Arlington, Washington on property owned by Mrs. Roberta Derosier. A business called "Doggy Day Care" was also located on the property, in a different building. The government introduced photographs taken at Doggy Day Care of scanners, computers, ink jet printers and duplication materials. (Exs. 3 and 4.) The government contends that the presence of this equipment corroborates the defendant's involvement in the fraud scheme. However, Mrs. Derosier, the defendant's landlady, testified that she owns and operates the Doggy Day Care business, and the equipment is owned by her and used in the business. The government did not introduce any evidence that would contradict Mrs. Derosier's assertion.

Taken as a whole, the evidence as presented at the evidentiary hearing does not satisfy the government's burden of proving by a preponderance of evidence that defendant committed the crime of Theft 1 on or before January 7, 2010. I recommend the Court dismiss alleged violation 4.

*Committing the Crime of Possession of Stolen Property on or before January 7, 2010*

I also find that the government has not established by a preponderance of the evidence that defendant has violated the conditions of supervised release as alleged in violation 5. The government's case poses similar deficiencies as with alleged violation 4.

This particular alleged violation is based on the government's contention that the defendant participated in the theft of a generator valued at approximately $17,500 from an individual named James Dolan. (Exs. 18, 19) The defendant's potential involvement in this theft came to the attention of Detective Michael Phillips of the Arlington Police Department during the course of a different investigation of an individual named Eric Sykes for burglaries at a local lumber company. Detective Phillips obtained an arrest warrant for Mr. Sykes in connection with those burglaries and took him into custody. During the arrest, Detective Phillips foiled an attempt by Mr. Sykes to inject himself with heroin before being taken into custody. A pawn shop receipt was found on Mr. Sykes for property belonging to his stepfather, which he had taken and pawned without permission. Mr. Sykes' parents told Detective Phillips that their son had tried to commit suicide several days previously and was currently "dope sick".

While questioned by Detective Phillips, Mr. Sykes implicated the defendant in the theft of the above-described generator, currently located on Mr. Sykes' property. Sykes told Detective Phillips that the defendant had asked him on several occasions to assist in stealing a generator for the defendant to use on his property in case of a loss of electrical power. Then, one day, the defendant came by with a generator mounted on a trailer and dropped it off at Sykes' property and asked to store it there. Sykes assumed, but was not told, that the generator was stolen. After the generator was on the property for about a month, the defendant asked Sykes to paint it "to
SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS
TO ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE -7

make it blend in better at the Doggy Day Care". Mr. Sykes[4] testified that he was "dope sick and throwing up" when the generator arrived at his property, and was dope sick and partially high, coming down from heroin, at the time he signed his witness statement. (Ex. 17.) At the time of the evidentiary hearing, Mr. Sykes testified that he had been clean and sober for 35 days.

Mr. Sykes' testimony is the only evidence connecting the defendant to the theft of the generator. Mr. Sykes has a significant substance abuse problem, and his written statement is inculpatory of his involvement in the lumber theft scheme. The stolen generator was found on his property. His testimony that the defendant brought the generator to his property is contradicted by the written statement of his mother, who declared under penalty of perjury that Mr. Sykes brought it there. (Ex. A-1.)

Taken as a whole, the evidence as presented at the evidentiary hearing does not satisfy the government's burden of proving by a preponderance of evidence that defendant committed the crime of Possession of Stolen Property 1 on or before January 7, 2010. I recommend the Court dismiss alleged violation 5.

## Summary

The government concedes that the defendant would not be convicted of these offenses if proof were required beyond a reasonable doubt, but argues that the evidence satisfies the lesser preponderance of the evidence standard. This Court disagrees. I recommend that violations 1, 2, and 3 be dismissed upon motion of the government, and that the Court dismiss violations 4 and 5 as not proven by a preponderance of the evidence.

---

[4] Sykes testified that he agreed to cooperate in exchange for immunity for prosecution for the state charges. He has one misdemeanor conviction for solicitation of a controlled substance.

Pending a final determination by the Court, defendant has been detained.

DATED this 2nd day of March, 2010.

                                                */s/ Mary Alice Theiler*
Mary Alice Theiler
United States Magistrate Judge

cc:   District Judge:         Honorable Marsha J. Pechman
      AUSA:                   Adam Cornell
      Defendant's attorney:   Gabriel I. Banfi
      Probation officer:      Steven R. Gregoryk

SUMMARY REPORT OF U.S. MAGISTRATE JUDGE AS
TO ALLEGED VIOLATIONS OF SUPERVISED RELEASE
PAGE -9